**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 2**

Docket No. CB-1216-16-0018-T-1

**Special Counsel,**

**Petitioner,**

**v.**

**Rodney Cowan,**

**Respondent.**

March 29, 2022

Erica S. Hamrick, Esquire, Washington, D.C., for the petitioner.

Bryan Delius, Esquire, Sevierville, Tennessee, for the respondent.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristian L. Leavitt, Member

## OPINION AND ORDER

¶1 This case is before the Board on interlocutory appeal from the administrative law judge's order staying the proceedings and certifying his ruling that the parties' Modified Settlement Agreement cannot be approved because it is inconsistent with Board precedent and prohibitions in the Hatch Act set forth at 5 U.S.C. § 7323(a). For the following reasons, we REVERSE the administrative law judge's ruling, GRANT the parties' joint motion to approve the agreement, FIND, based on stipulations in the agreement, that the respondent violated the Hatch Act by being a candidate for election to a partisan political office while he was a full-time employee of the U.S. Postal Service (USPS), ORDER USPS to

suspend the respondent without pay for 180 days consistent with the terms of the agreement, and DISMISS this matter as settled.

## BACKGROUND

¶2    The Office of Special Counsel (OSC) initiated this proceeding by filing a complaint for disciplinary action against the respondent for violating the Hatch Act, which generally restricts the political activity of Federal employees. Complaint File (CF), Tab 1 at 4.  Specifically, OSC alleged that the respondent violated 5 U.S.C. § 7323(a)(3) and 5 C.F.R. § 734.304 by being a candidate for the partisan political office of County Commissioner of Sevier County, Tennessee, in the 2014 general election while he was a full-time USPS employee at the Seymour Post Office located in Sevier County, Tennessee.  CF, Tab 1 at 5.

¶3    After the matter was assigned to an administrative law judge for adjudication, the parties filed a joint motion for approval and enforcement of their settlement agreement.  CF, Tab 3.  Under the terms of the agreement, the respondent admitted that he violated the Hatch Act's prohibition against being a candidate for partisan political office while being a full-time USPS employee during the 2014 general election, and he agreed and accepted that, as a penalty for his action, he would be suspended without pay from his USPS position for 180 days.  *Id.* at 7-8.  OSC agreed not to reinstitute this Hatch Act complaint absent a material breach of the terms of the settlement agreement.  *Id.* at 8.  The parties requested that the administrative law judge approve the agreement, order USPS to suspend the respondent without pay for 180 days, enter the agreement into the record so that the Board will retain jurisdiction to ensure compliance with the agreement, and dismiss the complaint with prejudice as settled.  *Id.* at 5-6.

¶4    The administrative law judge raised concerns with the parties about the validity of the agreement because the respondent had been elected to and continued to hold the state office.  CF, Tab 5.  The administrative law judge ordered the parties to file written submissions addressing whether the Hatch Act

and Board precedent permit a settlement agreement allowing a respondent to maintain both a Federal and state-elected position, "which generated a Hatch Act complaint before the Board." *Id.* at 3. The administrative law judge further ordered that, if the parties maintained that such a settlement is permitted, then they must modify the proposed settlement agreement to include language specifying whether the respondent may retain both positions. *Id.*

¶5        OSC responded that the Hatch Act permits a settlement agreement allowing a respondent to maintain his Federal position and an elected office that was won in violation of the Hatch Act.[1] CF, Tab 6. OSC explained that the Hatch Act does not prohibit a Federal employee from holding an elected office but rather prohibits a Federal employee from running for the nomination or as a candidate for the election to a partisan political office. *Id.* at 4-5 (citing 5 U.S.C. § 7323(a)(3); 39 U.S.C. § 410(b)(1)). OSC argued that Board precedent did not require a Federal employee to vacate an elected office as a condition of a settlement agreement and that, to the extent language in prior Board decisions may have suggested otherwise, such language was not controlling after the Hatch Act Modernization Act of 2012 (Modernization Act), Pub. L. No. 112-230, 126 Stat. 1616 (2012), which increased the Board's discretion in imposing appropriate penalties for Hatch Act violations. CF, Tab 6 at 5-6. OSC asserted that the 180-day suspension is a substantial penalty within the range of permissible penalties under the Modernization Act. *Id.* at 7. OSC submitted a Modified Settlement Agreement, executed by OSC and counsel for the respondent, which included provisions that, "because the Hatch Act does not prohibit [the respondent] from holding the elective County Commissioner office, [OSC] will not pursue additional disciplinary action against him for continuing to hold the office" and that, "should [the respondent] again become a candidate for

---

[1] The respondent did not file any separate response.

partisan political office while employed in a Hatch Act-covered position, such action would constitute an additional violation of the Hatch Act for which OSC would pursue disciplinary action against him." *Id.* at 10-11.

¶6 The administrative law judge found that the Modified Settlement Agreement is inconsistent with the Hatch Act and Board precedent indicating that holding an elected office is an aggravating factor in determining the penalty for a Hatch Act violation. CF, Tab 7 at 2, 4-7 (citing *Special Counsel v. Bradford*, 62 M.S.P.R. 239 (1994), *as modified on recons.*, 69 M.S.P.R. 247 (1995)). The administrative law judge further found that the Modernization Act does not support allowing an individual who knowingly violates the Hatch Act to retain both his Federal employment and elected position obtained by the violation. *Id.* at 7-11. The administrative law judge disapproved the settlement agreement and certified his ruling for interlocutory review by the Board. *Id.* at 11.

## ANALYSIS

### The administrative law judge properly certified an interlocutory appeal.

¶7 An interlocutory appeal is an appeal to the Board of a ruling made by a judge during a Board proceeding. 5 C.F.R. § 1201.91. The Board's regulations permit a judge, on his own motion, to certify an interlocutory appeal if the issue presented is of such importance to the proceeding that it requires the Board's immediate attention. *Id.* The ruling must involve an important question of law or policy about which there is substantial ground for difference of opinion. 5 C.F.R. § 1201.92. Further, the circumstances must be such that either an immediate ruling will materially advance the completion of the proceeding or the denial of an immediate ruling will cause undue harm to a party or the public. *Id.* We find these requirements are satisfied here. The Board has not addressed the issue presented since the enactment of the Modernization Act, and an immediate ruling avoids the potential for the unnecessary expenditure of the parties' and the Board's resources in litigating matters that, in the interest of justice and judicial

economy, can be appropriately resolved on the existing record pursuant to the parties' settlement agreement.

The parties' Modified Settlement Agreement is valid.

¶8       Under 5 U.S.C. § 7323(a)(3), a Federal employee may not "run for the nomination or as a candidate for election to a partisan political office." It is not the holding of the office that violates the Hatch Act but rather partisan candidacy for that office. *E.g.*, *Special Counsel v. Bradford*, 69 M.S.P.R. 247, 249 (1995). The prohibition against such a candidacy applies to USPS employees such as the respondent. *See* 39 U.S.C. § 410(b)(1); *Special Counsel v. Lewis*, 121 M.S.P.R. 109, ¶ 2, *aff'd*, 594 F. App'x 974 (Fed. Cir. 2014).

¶9       OSC investigates allegations of such prohibited political activity and may seek disciplinary action by filing a complaint with the Board. 5 U.S.C. §§ 1215(a)(1)(B), 1216. If the Board finds the employee has engaged in prohibited political activity, current law provides that the Board "may impose" the following penalties: (1) "disciplinary action consisting of removal, reduction in grade, debarment from Federal employment for a period not to exceed 5 years, suspension, or reprimand"; (2) "an assessment of a civil penalty not to exceed $1,000"; or (3) any combination of such disciplinary actions and civil penalty. 5 U.S.C. §§ 1215(a)(3)(A), 7326.

¶10      The Board favors the use of settlements to avoid the unnecessary expenditure of resources and litigation. *Special Counsel v. Giles*, 56 M.S.P.R. 465, 467 (1993). A settlement must be freely entered and lawful on its face before the Board will give it any effect. *See id.*; *Special Counsel v. Reckard*, 69 M.S.P.R. 130, 132 (1995). There are additional considerations when, as here, the settled Board proceeding is based on a disciplinary action complaint brought by OSC and the employing agency is not a party to the settlement agreement. *See* *Special Counsel v. Evans-Hamilton*, 29 M.S.P.R. 516, 517 n.1 (1984). In such a situation, the Board must exercise its statutory penalty authority to direct the nonparty, employing agency to effect any agreed upon and approved discipline.

*Id.* The Board may reject a settlement of a disciplinary action complaint if it provides for a penalty outside the scope of permissible penalties for a Hatch Act violation. *Reckard*, 69 M.S.P.R. at 132.

¶11 Here, the parties have asked the Board to accept their settlement agreement under which the respondent would be suspended from his USPS position without pay for 180 days. A suspension is within the scope of permissible penalties the Board may impose under current law for a Hatch Act violation. 5 U.S.C. § 1215(a)(3)(A). We find nothing in the statute that requires an employee to relinquish the elected position before the Board may impose an authorized penalty less than removal. *See* 5 U.S.C. §§ 1215, 7323.

¶12 Prior to the enactment of the Modernization Act, the Board's penalty authority for Hatch Act violations was more restricted. Prior law required that an individual found to have violated the Hatch Act would be removed from his Federal position unless the Board found by unanimous vote that the violation did not warrant removal. *Lewis*, 121 M.S.P.R. 109, ¶ 20. If that unanimous finding was made, the Board could direct the Federal employing agency to impose a suspension of not less than 30 days. *Id.*; *e.g.*, *Special Counsel v. Zanjani*, 21 M.S.P.R. 67, 69 (1984). A respondent found to have violated the Hatch Act bore the burden of presenting evidence showing that the presumptive penalty of removal should not be imposed. *Lewis*, 121 M.S.P.R. 109, ¶ 20.

¶13 Given these prior restrictions, the Board generally would not accept a settlement of a Hatch Act complaint that would result in a penalty less than removal of the Federal employee unless the record contained stipulations or admissions as to the circumstances of the violation or to relevant mitigating or aggravating factors. *See Special Counsel v. Baker*, 69 M.S.P.R. 36, 39 (1995); *Zanjani*, 21 M.S.P.R. at 69. In that context, the Board would, as in the *Bradford* case cited by the administrative law judge, take into account an employee's refusal to relinquish his elected position as an aggravating factor in determining the appropriate penalty for a Hatch Act violation. *Bradford*, 69 M.S.P.R. at 250.

Conversely, an employee's decision to forgo the elected position could be considered a mitigating factor. *See Special Counsel v. DeWitt*, 113 M.S.P.R. 458, ¶¶ 3, 6-7 (2010); *Special Counsel v. Pierce*, 85 M.S.P.R. 281, ¶¶ 2-5 (2000). To the extent, however, that such pre-Modernization Act cases could be read as imposing a requirement that a Federal employee relinquish an elected office as a condition of accepting a settlement providing for the suspension, rather than removal, of the employee from Federal service, we find that such a requirement would not apply under current law.

¶14      Under current law, removal is no longer the presumptive penalty for a Hatch Act violation, and a unanimous vote of the Board is no longer required to impose a penalty of less than removal. *Lewis*, 121 M.S.P.R. 109, ¶¶ 20-21. Further, the range of appropriate penalties has been expanded to encompass a broader array of lesser disciplinary actions, identical to the range of penalties available when OSC brings a complaint for disciplinary action based on a prohibited personnel practice. 5 U.S.C. § 1215(a)(3)(A); *Lewis*, 121 M.S.P.R. 109, ¶ 21; *see* S. Rep. No. 112-211, *as reprinted in* 2012 U.S.C.A.A.N. 750, 754-55. When adjudicating a complaint under the Modernization Act, the Board will apply the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), in determining the proper penalty for a Federal employee's violation of the Hatch Act. *Lewis*, 121 M.S.P.R. 109, ¶ 23.

¶15      We find, however, that a *Douglas* factors analysis is not required under the Modernization Act before the Board may accept and approve a settlement agreement that would result in a disciplinary action short of removal for a violation of 5 U.S.C. § 7323. The Board has not required such an analysis before accepting settlements in another analogous situation within its original jurisdiction: disciplinary actions against administrative law judges. By statute, certain disciplinary actions against administrative law judges may be taken "only for good cause established and determined by the [Board] on the record after opportunity for hearing." 5 U.S.C. § 7521. In such matters, the choice of penalty

is for the Board, which will look to the relevant *Douglas* factors as guidance in making its decision. *E.g.*, *Social Security Administration v. Steverson*, 111 M.S.P.R. 649, ¶ 18 (2009), *aff'd*, 383 F. App'x 939 (Fed. Cir. 2010). The Board has relied on stipulations in a settlement agreement to find good cause for disciplining an administrative law judge and has authorized agreed-upon penalties that are lawful on their face without engaging in an independent analysis of the *Douglas* factors. *See Social Security Administration v. Liebling*, 71 M.S.P.R. 465, 466-67 (1996); *Social Security Administration, Department of Health & Human Services v. Givens*, 27 M.S.P.R. 360, 361-62 & n.2 (1985).

¶16    We find that the Modified Settlement Agreement has been freely entered into by the parties and is lawful on its face. The parties' stipulations are sufficient to establish that the respondent violated the Hatch Act, 5 U.S.C. § 7323(a)(3), and the discipline to which the respondent has agreed (a 180-day suspension without pay), is within the range of statutorily authorized penalties for such a violation, *see* 5 U.S.C. §§ 1215(a)(3)(A), 7326. We find no basis for concluding that settlement of the complaint on the agreed terms would be against the interest of justice or prejudicial to the respondent or any other interested party.

## ORDER

¶17    Accordingly, we APPROVE the parties' Modified Settlement Agreement, ENTER it into the record for enforcement purposes, and DISMISS this matter with prejudice as settled.

¶18    We ORDER the USPS to suspend the respondent without pay for 180 days. We ORDER the Office of Special Counsel to notify the Board within 30 days of this Opinion and Order whether the respondent has been suspended as ordered. This is the final decision of the Merit Systems Protection Board in this matter. 5 C.F.R. § 1201.126.

## NOTICE TO THE PARTIES
## OF THEIR ENFORCEMENT RIGHTS

If the petitioner or the respondent has not fully carried out the terms of the agreement, either party may ask the Board to enforce the settlement agreement by promptly filing a petition for enforcement with the Office of the Clerk of the Board. The petition should contain specific reasons why the petitioning party believes that the terms of the settlement agreement have not been fully carried out, and should include the dates and results of any communications between the parties. 5 C.F.R. § 1201.182; *see* 5 C.F.R. § 1201.121(b)(2).

## NOTICE OF APPEAL RIGHTS

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[2]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[2] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.